UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| |  |
|---|---|
| STEPHEN F. CASS,<br><br>Plaintiff,<br><br>vs.<br><br>TOWN OF WAYLAND, WAYLAND PUBLIC SCHOOLS, WAYLAND POLICE DEPARTMENT, PAUL STEIN, BRAD CROZIER, ALLYSON MIZOGUCHI, and JAMES BERGER (MISNAMED),<br><br>Defendants. | C.A. NO 1:17-cv-11441 |

**PLAINTIFF'S TRIAL BRIEF**

Pursuant to this Court's Scheduling Order (Doc. 100), and in accordance with LR 16.5(f), Plaintiff Stephen F. Cass submits this trial brief relating to the upcoming trial scheduled to commence on July 8, 2019.

### I. THE THREE CLAIMS AT ISSUE

Three claims will be tried to the jury: (1) whether Defendants decided not to renew Mr. Cass's contract as the Athletic Director for Wayland High School for unlawful retaliatory reasons in violation of the Massachusetts Whistleblower Protection Act; (2) whether Defendants decided not to renew Mr. Cass's contract as the Athletic Director for Wayland High School for unlawful retaliatory reasons in violation of Title IX; and (3) whether the individual Defendants (Paul Stein, Brad Crozier, and/or Allyson Mizoguchi) acted with malice in intentionally interfering with Mr. Cass's contract as the Athletic Director for Wayland High School, thereby resulting in the decision to not renew his contract.

### A. Mr. Cass's Claim Under the Massachusetts Whistleblower Protection Act

The Massachusetts Whistleblower Protection Act (the "MWPA") prohibits an employer from "tak[ing] any retaliatory action against an employee because the employee … [d]iscloses … to a supervisor or to a public body an activity, policy or practice of the employer … that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law." Mass. Gen. Laws. ch. 149, § 185(b)(1). The MWPA defines retaliatory action as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." *Id*. at § 185(a)(5).

"To prevail on an [MWPA] claim, an employee must show 'that he engaged in protected activity and that his participation in that activity played a substantial or motivating part in the retaliatory action.'" *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 303 (1st Cir. 2014) (quoting *Welch v. Ciampa*, 542 F.3d 927, 943 (1st Cir. 2008)). To the extent that the employer "proffer[s] a legitimate, non-retaliatory reason for the [adverse action]," the employee must then come forward with "evidence showing both that the proffered reason is pretextual and that a retaliatory animus sparked his dismissal." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 262 (1st Cir. 1999).

The evidence at trial will show that Mr. Cass notified his superiors (both orally in in writing) about his reasonable beliefs regarding Wayland High School's failure to comply with certain rules, policies, and laws. The evidence will further show Mr. Cass's participation in the protected activity played a substantial or motivating part in the retaliatory action: the non-renewal of his contact as the Athletic Director for Wayland High School.

During the course of his employment as the Athletic Director, Mr. Cass reported to Defendants his good faith and reasonable beliefs that the School, teams, and coaches were

violating various rules, policies, and procedures, including a mandatory fundraising policy issued by the Wayland School Committee, which directed as follows:

> All fundraising for schools *shall* … be conducted by the school support organizations such as … Boosters … . Any other fundraising *must* receive prior approval from the Superintendent and School Committee.

In response to his disclosure of the violations of policies, rules and procedures, and in conjunction with his request that the administration support him in properly carrying out and remedying the same, his contract was not renewed.

The temporal proximity between Mr. Cass's protected disclosures and the adverse actions taken against him is sufficient to satisfy the MWPA *prima facie* case, and, subsequently, the burden shifts to Defendants to proffer a legitimate and non-retaliatory reason for the adverse action taken against Mr. Cass. *Amirault v. City of Malden*, 335 F. Supp. 3d 111, 122 (D. Mass. 2018) (citing *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008)). The *Amirault* court, in deciding whether the plaintiff's protected disclosures caused his employer to take adverse employment action against the plaintiff in violation of the MWPA, applied the legal framework used in Title VII of the Civil Rights Act of 1964 ("Title VII") retaliation cases and stated that "our law is that temporal proximity alone can suffice to meet the relatively light burden of establishing a *prima facie* case of retaliation." *Id.* In particular, the First Circuit has held that a five week time lapse between the making of a protected disclosure and the occurrence of an adverse employment action is sufficient to establish a *prima facie* case of retaliation under Title VII. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25–26 (1st Cir. 2004).

The evidence at trial will show that the Defendants' proffered reason for not renewing Mr. Cass's contract is mere pretext. Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons

for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662-663 (1st Cir. 2010). Such implausibilities and contradictions can be evidenced through "deviations from standard procedures, the sequence of occurrences leading up to a challenged decision, and close temporal proximity between relevant events." *Harrington v. Aggregate Indus. Ne. Region, Inc.,* 668 F.3d 25, 33 (1st Cir. 2012; *see also Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017) ("An employer's unusual deviation from standard procedures can serve as circumstantial evidence of discrimination."). Moreover, an "employer's different and arguably inconsistent explanations for its challenged employment action can serve as evidence of pretext." *Billings v. Town of Grafton*, 515 F.3d 39, 56 (1st Cir.2008) (internal quotation marks and citations omitted). Additionally, "[t]emporal proximity alone can be sufficient to establish pretext, but only where it is strongly suggestive of retaliation." *See Katica v. Webster Bank, N.A.*, No. 13-CV-30072-MAP, 2014 WL 3587383, at *12 (D. Mass. July 18, 2014) (citing *Henry v. United Bank*, 686 F.3d 50, 57 (1st Cir. 2012)).

**B.     Mr. Cass's Claim Under Title IX**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a). Title IX also prohibits retaliation against those who complain of violations of the act, even where the complainant is not the victim of the Title IX discrimination that was the subject of his original complaints. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 180 (2005).

To prevail on a Title IX retaliation claim, a plaintiff must show that he or she "engaged in

4

activity protected by Title IX, that the alleged retaliator knew of the protected activity, that the alleged retaliator subsequently undertook some action disadvantageous to the actor, and that a retaliatory motive played a substantial part in prompting the adverse action." *Fox,* 14-CV-10337-LTS, 2016 WL 4771057, at *7 (quoting *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002)). In the First Circuit, it is well established that the "jurisprudence of Title VII supplies an applicable legal framework" for Title IX claims. *Id.* Applying the *McDonnell Douglas Corp. v. Green* burden-shifting framework, a plaintiff who has brought forth a Title VII retaliation claim, must show: "[1] protected participation or opposition under Title VII known by the alleged retaliator; [2] an employment action or actions disadvantaging persons engaged in protected activities; and [3] a causal connection between the first two elements[,] that is[,] a retaliatory motive playing a part in the adverse employment actions." *Hazel v. U.S. Postmaster Gen.*, 7 F.3d 1, 3 (1st Cir. 1993) (citations omitted).

Once a plaintiff has established a *prima facie* case, "the burden of production, not persuasion, shifts to the defendant to articulate a plausible, legitimate, and nondiscriminatory justification for the employment decision." *Id.* Once the employer puts forth a legitimate non-retaliatory reason for its adverse employment action, "the burden reverts to the plaintiff to show that the proffered reason was not the real reason for the adverse employment action but, rather, was a pretext for retaliation." *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 350 (1st Cir. 2018).

The evidence at trial will show that Mr. Cass made protected disclosures to Defendants, specifically regarding his reasonable belief that the School was in violation of Title IX, and that, in retaliation, Defendants decided not to renew his contract.

At the pretrial conference, held on June 20, 2019, this Court inquired about Mr. Cass's retaliation claim under Title IX, and specifically asked whether there is any case law supporting that a retaliation claim under Title IX may survive where the complainant reports his good faith belief that funding is negatively impacting girls' sports teams. In *Jackson*, the United States Supreme Court held that the plaintiff (the former high school girls' basketball coach) could state a claim alleging retaliation under Title IX for having complained about disparate funding in athletic programs. *Jackson*, 544 U.S. at 171 (allowing retaliation claim to go forward, based on coach's complaints to supervisors that the girls' basketball team "was not receiving equal funding and equal access to athletic equipment and facilities"); *see also Miller v. Board of Regents of University of Minnesota*, Case No. 15-CV-3740, 2018 WL 659851 at*4 (D. Minn. Feb. 1, 2018) (raising the issue of disparate funding for women's teams deemed protected conduct under Title IX).

### C. Mr. Cass's Claim for Tortious Interference with Contractual Employment Relations

A former employee's claim against his supervisors for intentional interference with contractual employment relations consists of the following elements: (1) the defendant supervisors knew a contract for employment existed between the former employee and employer; (2) the defendant supervisors knowingly interfered with the former employee's contract in a manner preventing performance of the contract or causing performance to become more burdensome; and (3) as a result of that interference, the former employee suffered harm. *See generally Boyle v. Boston Foundation, Inc.* 788 F. Supp. 627, 629-630 (D. Mass. 1992).

Although employment supervisors are entitled to a certain qualified privilege (to the extent that supervisor acts within the scope of his or her employment duties in the issuance of performance reviews of employees), it is well-settled that this privilege is not "sacrosanct." *See*

*Zimmerman v. Direct Federal Credit Union*, 262 F.3d 70, 76 (1st Cir. 2001). Indeed, "Massachusetts treats proof of actual malice as a proxy for proof that a supervisor was not acting on the employer's behalf, and deems such proof sufficient to overcome the qualified privilege." *Id.* Here, the evidence at trial will show that the individual supervisor Defendants (Dr. Stein, Ms. Mizoguchi, and Mr. Crozier) acted with such malice in retaliating against Mr. Cass for his actions as a whistleblower. This prevented Mr. Cass from performing his job obligations under his contract, which culminated in his termination from employment without renewing his contract.

At the eleventh hour and on the eve of trial, Defendants have injected a newly-minted and entirely misplaced theory into this case, raising for the first time via a sentence in the Joint Pretrial Memorandum, that Mr. Cass's contractual claim is barred by the exclusivity provision contained in Mass. General Laws, ch. 150E, §8. That statute has no relevance to any of the claims asserted in this case, as that statute concerns public employees in a bargaining unit governed by a collective bargaining agreement, which Mr. Cass was not. There is no evidence in the record demonstrating that Mr. Cass was a member of any purported bargaining unit or that he was governed by a purported collective bargaining agreement. To the contrary, during the entire course of Mr. Cass's employment, Defendants knew that Mr. Cass did not hold teaching position at Wayland High School, and they never required that of him. Instead, it is beyond cavil that Mr. Cass was unquestionably employed as a *full-time* Athletic Director, and did *not* split his time between his Athletic Director duties and teaching. Simply put, Mr. Cass was not a teacher, did not split any of his team teaching, and was not expected to teach in addition to his role as the Athletic Director.

During the course of the ligation of this case, Defendants never produced the purported collective bargaining agreement they now say was applicable to Mr. Cass for purposes of trial. Instead, earlier today, Defendants' counsel emailed the purported collective bargaining agreement requesting that it be included as an agreed-upon exhibit for trial. Mr. Cass objects to the inclusion of the purported collective bargaining agreement as a trial exhibit, and objects to the use of this agreement at trial, for any purpose. Furthermore, Defendants did *not* raise this issue as an affirmative defense in their Answer to the First Amended Complaint, and Defendants never sought leave of this Court to amend their affirmative defenses to include this theory. Further, this theory was not raised in Defendants' briefing on summary judgment, in which it moved for summary judgment as to Mr. Cass's contract claim. Accordingly, this Court should reject Defendants' eleventh hour theory as untimely and irrelevant and preclude Defendants from introducing and/or using the purported collective bargaining agreement at trial.

## II. OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS

Mr. Cass objects to Defendant's Proposed Jury Instructions (Doc. 126) (the "Proposed Jury Instructions").

Mr. Cass objects to Request Nos. 3 and 6 of the Proposed Jury Instructions to the extent that the jury is instructed that those with a financial interest in the case "*should be examined by the jury with more care and scrutiny than the testimony of a witness who has no financial interest*" and that "*[w]hile a person does not always lie when money is involved it may be an incentive to depart from the truth*." This instruction is unfairly prejudicial to Mr. Cass. As the plaintiff, Mr. Cass clearly has a financial interest in the outcome of the lawsuit—he is seeking money damages. This instruction could cause the jury to impermissibly conclude that Mr. Cass's mere status as a plaintiff renders him less credible as a witness.

8

Mr. Cass objects to Request No. 10 of the Proposed Jury Instructions, which states that "*[o]rdinarily, we presume that public officials have 'properly discharged their official duties*.'" Defendants have not cited to any authority to suggest that this instruction is proper under the Massachusetts Whistleblower Protection Act, Title IX, or Mr. Cass's tortous interference with contract claim. This instruction is confusing and misleading, and unfairly prejudicial to Mr. Cass because it suggests that the jury should give undue weight and credence to the conduct of the individual Defendants on the mere basis that they are public officials. There is no basis in law for the jury to permissibly do so.

Mr. Cass objects to a portion of Request No. 17 of the Proposed Jury Instructions, which states that: "*In addition, Mr. Cass must establish that—prior to filing this lawsuit—he brought the activity, policy or practice in violation of law to the attention of one of the School Officials (Stein, Crozier, or Mizoguchi), in writing, and he afforded the Wayland School Department a reasonable opportunity to correct the activity, policy, or practice.*" This instruction is misleading, confusing, and misstates the law, particularly because, as drafted, it seems to suggest that Mr. Cass has an *additional* burden in this case to prove his claim, which simply is not so. It is beyond cavil that Mr. Cass informed Defendants about various violations of rules, policies and procedures during the time he served as the Athletic Director; it is further beyond cavil that, following the non-renewal of his contract, and prior to the initiation of this lawsuit, Defendants were abundantly aware of the imminence of this lawsuit. In fact, through the summer of 2015, the Wayland School Committee met in executive session on numerous occasions to discuss with counsel for the School Mr. Cass's vocal concerns that he had been retaliated against in violation of the MWPA and Title IX and that a lawsuit was imminent.

Mr. Cass objects to Request No. 20 of the Proposed Jury Instructions, which states that "*[t]he Whistleblower Act permits only an "employer" to be sued, not individual supervisors.*" This instruction will be confusing and misleading to the jury because it could cause the jury to impermissibly conclude that the *conduct of the supervisors* is not relevant to Mr. Cass's claims. Even if there is no basis to seek direct individual liability against the supervisors (under the Massachusetts Whistleblower Protection Act and Title IX), it is their conduct that is at issue in determining the liability of the employer. Indeed, the employer acts through its personnel.

Mr. Cass objects to Request No. 21 of the Proposed Jury Instructions relating to the two-year statute of limitations. The statute of limitations is not at issue and is clearly satisfied. The adverse employment decision—the non-renewal of Mr. Cass's contract—occurred on May 8, 2015 (two years prior to the initiation of this lawsuit). The inclusion of this instruction only serves to confuse and mislead the jury. As drafted, this instruction appears to suggest that the conduct of Mr. Cass and Defendants pre-dating May 8, 2015 cannot be assessed in analyzing Mr. Cass's claims because that conduct occurred more than two years prior to the filing of the lawsuit. That interpretation of the statute of limitations is erroneous. The statute of limitations is triggered by the date upon which Mr. Cass is notified of the adverse employment decision. All of the conduct pre-dating that decision relating to Mr. Cass's employment is relevant in this case and is not precluded from the jury's deliberations just because it occurred prior to May 8, 2015.

Mr. Cass objects to the portion of Request No. 25 of the Proposed Jury Instructions, providing that "*[h]ere, it is uncontested that Mr. Cass had two one-year contracts with the Wayland School Department, and each of those contracts provides that Mr. Cass was to be notified by the Superintendent by April 1st if the School Department intended to renew his contract for the following year*." This proposed instruction (which is not a jury instruction, but,

rather *a position* that Defendants likely will advance at trial) is misleading, mischaracterizes evidence, suggests that certain evidence is "uncontested," puts improper weight on the notice provision in the contract as somehow dispositive, and is improper.

### III. MR. CASS'S OBJECTION TO DEFENDANTS' PROPOSED JURY VERDICT FORM

Mr. Cass objects to Defendants' Proposed Jury Verdict Form (Doc. 127) (the "Proposed Jury Verdict Form").

Mr. Cass objects to the Proposed Jury Verdict Form on the grounds that the verdict form is overly complicated, compounding, and unnecessarily confusing to the jury.

Mr. Cass objects to the Proposed Jury Verdict Form on the additional and separate ground that the specific question pertaining to whether Mr. Cass provided Defendants with a reasonable opportunity to cure is misleading, misstates the law and confuses the jury as to the issues to be decided related to Mr. Cass's claim under the Massachusetts Whistleblower Protection Act. Here, Mr. Cass alleges that he was retaliated against for reporting to his own supervisors various violations of rules, policies and procedures over the course of two years. As drafted, this verdict question suggests that Mr. Cass may not succeed on his claim unless he separately provided Defendant with a "reasonable opportunity to cure" the violations, outside of his repeated written and verbal notifications. There is no such requirement that he do so.

Mr. Cass objects to the Proposed Jury Verdict Form on the additional and separate grounds that the questions relating to mitigation of damages misstate the law. It is Defendants' burden to establish by a preponderance of the evidence that Mr. Cass has not mitigated his

damages.[1] As drafted, the Proposed Jury Verdict Form suggests that it is Mr. Cass's burden to do so.

### IV. MR. CASS'S OBJECTION TO DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS

In Defendants' Proposed Jury Voir Dire (Doc. 125), Defendants request that this Court ask, *inter alia*:

> "Are you an active supporter of the Me Too Movement? If so how? Would this impact your ability to listen to evidence and serve as a juror in an impartial manner?"
>
> "Are you familiar with the recent allegations involving Penn State and other well-known college football programs? Do you think football coaches have too much influence or power in the overall operations of the college or high school where they coach?

Mr. Cass objects to those questions being asked of the prospective jury during the voir dire process. Those questions have nothing to do with the pertinent issues in this employment case, which in no way concern sexual harassment or sexual abuse. Whether or not a juror personally identifies as part of the "Me Too" movement does not bear on any issue in this case. Likewise, whatever a juror may know about the "Penn State" case, which involved a terrible child sex abuse scandal, has no bearing on any issue in this case. Defendants should not be permitted to gage (1) a potential juror's sympathies with the "Me Too Movement" as a proxy for whether a juror cares about gender equity, or (2) a potential juror's knowledge about the "Penn State" allegations in framing their impressions about football coaches, as a litmus test for their preferred juror. Accordingly, for these reasons, Mr. Cass objects to Defendants' proposed voir dire questions.

---

[1] *See e.g., McKenna v. Commissioner of Mental Health*, 199 N.E.2d 686, 688 (Mass. 1964) (employer has the burden of proof on issue of mitigation of damages suffered by discharged employee).

### V. MR. CASS'S OBJECTION TO THE INTRODUCTION OF CERTAIN DOCUMENTS AND/OR TESTIMONY AT TRIAL

**A. Mr. Cass's Objection to Defendants Introducing Documents or Eliciting (or Attempting to Elicit) Testimony at Trial in Violation of this Court's Ruling Granting his Motion in *Limine* to Exclude (1) Certain Evidence of Mr. Cass's Conduct Pre-Dating July 2013—The Commencement of His Employment as the Wayland High School Athletic Director—And (2) Certain Evidence of Mr. Cass's Conduct After May 2015—When He was Notified that his Contract Would Not be Renewed**

Despite this Court's ruling on the record on June 20, 2019, granting in part and denying in part Mr. Cass's Motion in *Limine* to Exclude (1) Certain Evidence of Mr. Cass's Conduct Pre-Dating July 2013—The Commencement of His Employment as the Wayland High School Athletic Director—And (2) Certain Evidence of Mr. Cass's Conduct After May 2015—When He was Notified that his Contract Would Not be Renewed (Doc. 109) (the "Motion"), Defendants maintain that certain of their exhibits are nonetheless admissible at trial. Defendants' position is directly at odds with this Court's ruling.

As this Court is aware, at the hearing on this Motion, the Court granted in part and denied in part the Motion. In granting the Motion, the Court limited the introduction of evidence and testimony of *Mr. Cass's conduct* to the relevant time period: the commencement of his employment as the Athletic Director at Wayland High School through May of 2015 when he was notified of his non-renewal. The Motion was denied, in part, for the purpose of allowing Defendants' request that the jury be aware of the fact that Mr. Cass had previously filed a lawsuit against his former employer in Florida, in which he alleged that he had been retaliated against for his protected conduct of reporting recruiting violations, in violation of Florida's Whistleblower Act. This Court acknowledged that, because a prospective employer doing a very brief google search of Mr. Cass could learn that he has now filed two lawsuits against his former employers

(this lawsuit and the lawsuit in Florida), such information was relevant to Mr. Cass's contention that his inability to obtain employment relates to his non-renewal in *this case*.

Following the pretrial conference, the parties engaged in a meet and confer regarding their respective exhibit lists. Defendants withdrew a number of exhibits from their exhibit list, which were no longer relevant, in accordance with the Court's ruling on the Motion. However, Defendants did not eliminate certain exhibits that clearly have been excluded by this Court in granting the Motion, all of which relate to *Mr. Cass's conduct after* he was not renewed. This Court already has ruled that such evidence is not admissible and Defendants failed to raise in their objection to the Motion (both in the briefing and again at the hearing) the relevance of any of the exhibits they now refuse to withdraw.

Mr. Cass objects to the introduction of the following exhibits (and any testimony relating to the same) at trial, which remain on Defendants' exhibit list.

Exhibit CC is email Mr. Cass sent in August of 2015 (months after his non-renewal) to a Wayland resident, James Lampert. Mr. Cass's personal situation and correspondence with Mr. Lampert is not relevant, constitutes improper character and propensity evidence, and any probative value is substantially outweighed by the danger of unfair prejudice. The exhibit also contains an email from Mr. Lampert reporting that same correspondence to the Wayland Police. Apart from the fact that the emails are not relevant, Mr. Lampert's email is hearsay and therefore inadmissible for that separate reason.

Exhibits FF and GG purport to be surveillance photographs of Mr. Cass entering the School (during a time that he had permission to be there). The time and date stamps indicate that these surveillance photographs were taken after Defendants informed Mr. Cass of their decision not to renew his contract. The surveillance photographs are not relevant, and any probative

value of those photographs is substantially outweighed by the danger of unfair prejudice to Mr. Cass. Apart from the fact that the photographs are not relevant, they contain hearsay and are not authenticated.

Exhibit BB is an email Mr. Cass sent on the last day of his employment—six weeks after Defendants informed Mr. Cass of their decision not to renew his contract. The email is not relevant as it has no bearing on Defendants' decision not to renew his contract.

Exhibit HH is a Wayland Police Incident Report, dated June 7, 2015, relating to alleged conduct of Mr. Cass occurring after Defendants informed Mr. Cass of their decision not to renew his contract. The report is not relevant to the non-renewal of Mr. Cass's contract. Additionally, the Report is hearsay, and therefore inadmissible on those separate grounds.

Exhibits II and JJ consist of an email among Wayland residents relating to an incident of Mr. Cass's conduct that occurred after Defendants informed Mr. Cass of their decision not to renew his contract. Therefore, the incident is not relevant. Additionally, it is not admissible because it is hearsay. The Police Incident Report regarding that incident is likewise not relevant, and inadmissible because it is hearsay.

Exhibit KK is an email from Mr. Cass post-dating his employment at Wayland High School, and relates to his previous employment in Florida. This email is not relevant. The fact that Mr. Cass previously filed a lawsuit against that employer will be provided to the jury in the form of a stipulation.

To the extent that Defendants seek to introduce or use any such documents at trial, Mr. Cass objects to the same.

### B. Mr. Cass's Objection to the Admissibility of Documents that Defendants Failed to Produce in Discovery

The following exhibits on the list of contested exhibits were not produced by Defendants during discovery: B, C, D, EE, F, G, H, I, J, K, O, Q, R, BB, and DD. Those exhibits otherwise should have been produced in response to Plaintiff's First Request for Production of Documents. Having failed to supplement their discovery responses with responsive documents, in violation of its duty to supplement pursuant to Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure, Defendants should be precluded from introducing those same documents at trial, which otherwise should have been produced in discovery. *See Thibeault v. Square D. Co*., 960 F.2d 239, 246 (1st Cir. 1992) (failure to supplement in discovery response in violation of Rule 26(e) can result in preclusion of that document). To the extent that Defendants seek to introduce or use any such documents at trial, Mr. Cass objects to the same.

### C. Mr. Cass's Objection to the Admissibility of Documents that are Incomplete, in Violation of FRE 106

The following exhibits on the list of contested exhibits are incomplete: Exhibit E, Exhibit I, Exhibit L, and Exhibit V. In accordance with Rule 106 of the Federal Rules of Evidence, Mr. Cass objects to the admission of those documents into evidence unless the entire writing is admitted. Rule 106 of the Federal Rules of Evidence requires that Mr. Cass be permitted to have the *entire writing* introduced into evidence—not just the portions that Defendants cherry pick from the same writing. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."). To the extent that Defendants seek to introduce or use any such documents at trial, Mr. Cass objects to the same.

## VI. AT THE APPROPRIATE TIME, MR. CASS INTENDS TO MOVE FOR (1) REIMURSEMENT OF HIS REASONABLE ATTORNEYS' FEES AND COSTS AND (2) A TRIPLING OF HIS DAMAGES

Mr. Cass will be seeking reimbursement for his reasonable attorneys' fees and costs in this case, and will move for the same at the appropriate time, in accordance with the Massachusetts Whistleblower Protection Act (Mass. Gen. Laws 149 § 185(d)).

Mr. Cass will be seeking treble damages in this case, and will move for the same at the appropriate time, in accordance with the Massachusetts Whistleblower Protection Act (Mass. Gen. Laws 149 § 185(d)).

Plaintiff,
STEPHEN F. CASS,
By his Attorneys,

*/s/ Todd D. White*
Todd D. White, BBO #565924
Jamie J. Bachant, BBO #684244
Ali Khorsand, BBO #675060
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
twhite@apslaw.com
jbachant@apslaw.com
akhorsand@apslaw.com

Dated: July 1, 2019

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 1st day of July, 2019, I filed the within through the ECF system and that notice will be sent electronically to the below listed counsel who are registered participants identified on the mailing information for Case No. 17-11441.

Adam Simms, Esq.
John M. Wilusz, Esq.
John J. Davis, Esq.
Pierce Davis & Perritano LLP
10 Post Office Square, Suite 1100
Boston, MA 02109
(617) 350-0950
asimms@piercedavis.com
jwilusz@piercedavis.com
jdavis@piercedavis.com

                                          */s/ Todd D. White*

960491.v2