**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEPHEN F. CASS,<br><br>    Plaintiff,<br><br>    vs.<br><br>TOWN OF WAYLAND, WAYLAND PUBLIC SCHOOLS, WAYLAND POLICE DEPARTMENT, PAUL STEIN, BRAD CROZIER, ALLYSON MIZOGUCHI, and JAMES BERGER (MISNAMED),<br><br>    Defendants. | C.A. NO 1:17-cv-11441 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MEMORANDUM REGARDING ADMISSIBILITY OF WAYLAND HIGH SCHOOL 2015 ATHLETICS CULTURE STUDY REPORT**

  The Town of Wayland, Wayland Public Schools, Paul Stein, Allyson Mizoguchi, and Brad Crozier hereby submit this memorandum of law regarding the <u>inadmissibility</u> of the Wayland High School 2015 Athletics Culture Study Report (the "Study"). The Study, whose author (or authors) remains unknown, is itself hearsay, and contains countless hearsay statements barred by Fed. R. Evid. 802. The Study was never "adopted" by the defendants as an adoptive admission under Rule 801(d)(2)(B); it was never accepted by the Wayland School Committee; and there are no "exceptional circumstances" present to justify its exclusion from hearsay under Fed. R. Evid. 807. As further grounds, the defendants state as follows:

1. Federal Rule of Evidence 801(d)(2) exempts party opponent statements from the hearsay prohibition of Fed. R. Evid. 802. Rule 801(d)(2)(B) extends the hearsay exemption to statements the opposing party makes indirectly "by adopting or acquiescing in the statement of another." 30B Fed. Prac. & Proc. Evid. § 6774,

"Adopted Statements (Rule 801(d)(2)(B))" (2018). "When a party *explicitly agrees with the factual statement of another*, the party typically can be characterized as adopting the other person's statement." *Id.* (emphasis added). Rule 801(d)(2)(B) identifies two categories of adoption: words or actions that are adopted, and words or actions that are believed to be true. *Id.*; *see also* Fed. R. Evid. 801(d)(2)(B). *Plaintiff cites a single Rhode Island state court case for the proposition that the defendants adopted the Study by admission*: Powers v. Coccia, 861 A.2d 466, 470 (R.I. 2004).[1] Mr. Crozier's deposition testimony does not establish an adoptive admission of the Study; he never "explicitly agreed with the factual statement of another," or even implicitly agreed with any given statement as the Rule requires.

2. Cases discussing implicit adoption of a statement typically involve silent acquiescence or an equivocal response which amounts to an admission of the truth of the accusation. *See U.S. v. Miller*, 478 F.3d 48, 51 (1st Cir. 2007) (defendant's silent acquiescence during change-of-plea hearing constituted adoptive admission); *Com. v. MacKenzie*, 413 Mass. 498, 506 (1992) (defendant's statement, "we never meant to hurt the woman" did not constitute an adoption of another's confession); *Commonwealth v. Jones,* 400 Mass. 544, 547 (1987) (equivocal adoptive admission constituted a jury question); *see also Commonwealth v. Brown,* 394 Mass. 510, 515–516 (1985). Other cases involving adoption of a written statement "as an adoption of what its contents reveal" typically involve a singular fact. *See U.S. v. Paulino*, 13 F.3d 20, 24 (1st Cir.

---

[1] Plaintiff's Memorandum Regarding Admissibility of Wayland High School 2015 Athletics Culture Study Report incorrectly cites this case as one issued by the First Circuit Court of Appeals. *See* Memorandum, p. 3. This Rhode Island state court case is not controlling precedent in the First Circuit. Plaintiff's Memorandum cites no First Circuit cases.

1994) (money order receipt with defendant's name found in drug-raided apartment); *United States v. Ospina,* 739 F.2d 448, 451 (9th Cir.) (involving a receipt for a hotel room), *cert. denied,* 469 U.S. 887 (1984); *United States v. Marino,* 658 F.2d 1120, 1124–25 (6th Cir. 1981) (involving possession of airline tickets).

3. As indicated in the Study's introduction, the study "consisted of an online survey and focus groups with high school students, high school staff, coaches and members of the community." Plaintiff's Contested Exhibit J, p. 1, Introduction. There are no single "statements" at issue to justify consideration of the entire Study as an adoptive admission. The single line of deposition testimony plaintiff has seized upon here as a purported adoptive admission is a comment by Mr. Crozier indicating that, in his opinion, he "thought that it was a really good study." Crozier Dep., p. 248. Mr. Crozier did not explicitly agree with a factual statement of another, or even impliedly agree with *any* statement, such that his testimony could be considered an adoptive admission of the entire Study under the Federal Rules of Evidence. *See U.S. v. Wiseman*, 814 F.2d 826, 828-829 (1st Cir. 1987) (defendant's act of nodding his head in response to an introduction that referred to him as a "junk" or heroin distributor constituted adoptive admission); *see also* Fed. R. Evid. 801(d)(2)(B). In his deposition, Mr. Crozier was not asked if he agreed with the contents of the Study, the participants' responses, or any of the Study's conclusions. Plaintiff has not identified any particular "statement" adopted by Mr. Crozier or any of the other School Officials, yet attempts to introduce an entire 39-page report under this theory.

4. Moreover, Mr. Crozier did not offer "support" for the Study. *See* Plaintiff's Contested Ex. J, p. 1, ¶ 1; Crozier Dep., p. 245. He was not involved "at all" in the preparation

of the study. *Id*. He did not recall whether he was involved in the decision by Wayland High School to commission the study. *Id*. He testified he "was not involved in this study nor the sort of major findings after." *Id*. at 248.

5. The entirety of Mr. Crozier's limited deposition testimony on this Study is as follows:

> Q. My question for you, Mr. Crozier, is have you seen this document marked Exhibit 121 before?
>
> A. I believe this document to be the report from the study that Dr. Stein and the school committee commissioned through Northeastern.
>
> Q. Okay. And was that through the Northeastern Center of Study for Sport in Society? Did I get that right if you recall?
>
> A. On the second line it looks like that is true.
>
> Q. Thank you. Good. And were you involved in the decision by Wayland High School to commission the study?
>
> A. I don't recall.
>
> Q. Do you recall speaking with either Dr. Stein or Ms. Mizoguchi about the study before it began?
>
> A. I believe I spoke to Dr. Stein about it.
>
> Q. What do you recall about that discussion?
>
> A. I recall that he thought that it would be good to commission a study to dig into the perceptions of the constituents around athletics.
>
> Q. And do you recall having a reaction to that?
>
> A. I don't.
>
> Q. Did you agree or –
>
> A. I don't recall having a reaction.
>
> Q. All right. Were you involved at all in the Northeastern Center for Study of Sport in Society's preparation of this report or in the study itself?

>A. I don't believe I was at all.
>
>Q. You don't recall meeting with anybody from that organization?
>
>A. I did not.
>
>Q. Do you recall receiving the report, Exhibit 121?
>
>A. I do.
>
>Q. And do you recall reading it?
>
>A. I do.
>
>Q. And what do you recall about the report having read it?
>
>A. I thought that it was a really good study into the culture of the district and to go into these types of things open to criticism and -- and then to take action on how we can make things better.
>
>Q. And do you recall any criticism that was reflected in the report about the culture of Wayland High School athletics? Just sitting here, I am just wondering if you recall having read the report there being criticism in the report.
>
>A. I don't recall.
>
>Q. Do you recall any measures being taken after the report was issued to respond in any way to the results of the study?
>
>A. The only one that comes to mind is the study I believe -- maybe not quite in these terms -- recommended an advisory council, and I remember that advisory council being formed and meeting at certain points. **But again I was not involved in this study nor the sort of the major findings after.**

Deposition of Bradley Crozier, pp. 245-248 (attached hereto as **Exhibit A**) (emphasis added).

6. The Study is not a statement of the Town's agent Fed. R. Evid. 801(d)(2)(D) because it contains multiple hearsay statements of anonymous students, high school staff, and community members. *See generally* Plaintiff's Contested Ex. J. This hearsay-in-

hearsay cannot possibly be said to have been made by an "agent" of the Town. *Id.*; see also Fed. R. Evid. 801(d)(2)(C).

7. Moreover, as the defendants' counsel previously noted to the Court on the record on July 8, 2019, the Study is inadmissible as a subsequent remedial measure. "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence [or] culpable conduct." Fed. R. Evid. 407. While exceptions to this general rule exist (for impeachment, or for proving ownership, control, or the feasibility of precautionary measures), none of them apply to this case, nor has plaintiff offered the Study for such a limited purpose. *See id.* While plaintiff has argued the Study was evidence of his "reasonable belief" of the existence of Title IX violations, this is just another way of alleging that culpable conduct – purported Title IX violations – existed at Wayland High School. This is not one of the exceptions under Fed. R. Evid. 407 and, therefore, the Study is barred.

8. Finally, what little probative value the Study could provide (as evidence that Mr. Cass believed in the existence of Title IX violations) would be substantially outweighed by unfair prejudice to the defendants and the risk of misleading the jury, who could be led to believe Title IX violations did, in fact, exist. *See* Fed. R. Evid. 403.

9. Nonetheless, for the benefit of the jury, the defendants agree to admit pages 1 and 8 of the Study into evidence, provided that the six anonymous quotes located on the top and bottom of page 8 (Bates stamped BC00621) are redacted.

Defendants,
TOWN OF WAYLAND, WAYLAND PUBLIC SCHOOLS, PAUL STEIN, BRAD CROZIER, AND ALLYSON MIZOGUCHI,
By their Attorneys,

*/s/ John M. Wilusz*
Adam Simms, BBO #632617
John M. Wilusz, BBO #684950
John J. Davis, BBO #115890
PIERCE DAVIS & PERRITANO LLP
10 Post Office Square, Suite 1100
Boston, MA 02109
(617) 350-0950
asimms@piercedavis.com
jwilusz@piercedavis.com
jdavis@piercedavis.com

Dated:  7/10/19

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on July 10, 2019.

*/s/ John M. Wilusz*
John M. Wilusz