UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN F. CASS,<br>　　　　Plaintiff,<br><br>v.<br><br>TOWN OF WAYLAND, WAYLAND PUBLIC SCHOOLS, WAYLAND POLICE DEPARTMENT, PAUL STEIN, BRAD CROZIER, ALLYSON MIZOGUCHI, and JAMIE BERGER,<br>　　　　Defendants. | C.A. NO. 1:17-cv-11441 |

## **DEFENDANTS' SUPPLEMENTAL REQUEST FOR JURY INSTRUCTIONS**

In accordance with the Court's request of July 11, 2019, the Town of Wayland, Wayland Public Schools, Paul Stein, Brad Crozier, and Allyson Mizoguchi respectfully submit the following supplemental jury instruction regarding Title IX retaliation claims made in the context of athletics:

　　　　　　　　　　　　　　　　　　Defendants,
　　　　　　　　　　　　　　　　　　TOWN OF WAYLAND, WAYLAND
　　　　　　　　　　　　　　　　　　PUBLIC SCHOOLS, PAUL STEIN, BRAD
　　　　　　　　　　　　　　　　　　CROZIER, AND ALLYSON MIZOGUCHI,
　　　　　　　　　　　　　　　　　　By their Attorneys,


　　　　　　　　　　　　　　　　　　*/s/ John M. Wilusz*
　　　　　　　　　　　　　　　　　　Adam Simms, BBO #632617
　　　　　　　　　　　　　　　　　　John M. Wilusz, BBO #684950
　　　　　　　　　　　　　　　　　　John J. Davis, BBO #115890
　　　　　　　　　　　　　　　　　　PIERCE DAVIS & PERRITANO LLP
　　　　　　　　　　　　　　　　　　10 Post Office Square, Suite 1100
　　　　　　　　　　　　　　　　　　Boston, MA 02109
　　　　　　　　　　　　　　　　　　(617) 350-0950

## SUPPLEMENTAL REQUEST NO. 1

The law commonly referred to as "Title IX" provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. The statute also prohibits retaliation against employees who raise real and legitimate concerns about Title IX violations to their employers. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 181 (2005).

"A plaintiff asserting a [Title IX] retaliation claim must not only show that he or she subjectively, that is, in good faith, believed that his or her employer was engaged in unlawful employment practices but also that his or her belief was objectively reasonable in light of the facts and record presented." 45A Am. Jur. 2d Job Discrimination § 228 (2019) (discussing analogous Title VII standard).

Notably, Title IX permits a recipient of Federal financial assistance, such as the Town of Wayland, to "operate or sponsor separate teams for members of each sex where […] the activity involved is a contact sport." 34 C.F.R. § 106.41(b). "Contact sports include boxing, wrestling, rugby, ice hockey, football, basketball, and other sports the purpose or major activity of which involves bodily contact." *Id*.

A recipient of Federal financial assistance, such as the Town of Wayland, is required to provide an "equal athletic opportunity for members of both sexes." *Id*. Exact equality is not required. Instead, the law considers a number of factors in this assessment, including, but not limited to:

"(1) Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;

(2) The provision of equipment and supplies;

(3) Scheduling of games and practice time;

(4) Travel and per diem allowance;

(5) Opportunity to receive coaching and academic tutoring;

(6) Assignment and compensation of coaches and tutors;

(7) Provision of locker rooms, practice and competitive facilities;

(8) Provision of medical and training facilities and services;

(9) Provision of housing and dining facilities and services;

(10) Publicity."

34 C.F.R. 106.41(c).

Further, "Unequal aggregate expenditures for members of each sex or unequal expenditures for male and female teams if a recipient operates or sponsors separate teams will not constitute" a violation of the law. *Id*.

"The activities directly associated with the operation of a competitive event in a single-sex sport may, under some circumstances, create unique demands or imbalances in particular program components. Provided any special demands associated with the activities of sports involving participants of the other sex are met to an equivalent degree, the resulting differences may be found nondiscriminatory." U.S. Department of Education, Office of Civil Rights. (December, 1979). A policy interpretation: Title IX and intercollegiate athletics, Federal Register, Vol. 44, No. 239.[1] Retrieved March 1, 2004, from U.S. Department of Education Web site: https://www2.ed.gov/about/offices/list/ocr/docs/t9interp.html

"Some aspects of athletic programs may not be equivalent for men and women because of unique aspects of particular sports or athletic activities. This type of distinction was called for by the "Javits' Amendment" to Title IX which instructed HEW [the predecessor agency to the Department of Health and Human Services] to make "reasonable (regulatory) provisions considering the nature of particular sports" in intercollegiate athletics." *Id*.

"Generally, these differences will be the result of factors that are inherent to the basic operation of specific sports. Such factors may include rules of play, nature/replacement of equipment, rates of injury resulting from participation, nature of facilities required for competition, and the maintenance/ upkeep requirements of those facilities. For the most part, differences involving such factors will occur in programs offering football, and consequently these differences will favor men. If sport-specific needs are met equivalently in both men's and women's programs, however, differences in a particular program components will be found to be justifiable." *Id*. Accordingly, the fact that the Town of Wayland may spend more money on football than any other sport, by itself, does not constitute a violation of Title IX.

---

[1] "This Policy Interpretation explains the regulation so as to provide a framework within which the complaints can be resolved, and to provide institutions of higher education with additional guidance on the requirements for compliance with Title IX in intercollegiate athletic programs." *Id*.