UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN F. CASS,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF WAYLAND, WAYLAND PUBLIC<br>SCHOOLS, WAYLAND POLICE DEPARTMENT,<br>PAUL STEIN, BRAD CROZIER, ALLYSON<br>MIZOGUCHI, and JAMIE BERGER,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. NO. 1:17-cv-11441<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MOTION FOR JUDGMENT
AS A MATTER OF LAW UNDER RULE 50(a)
(CLOSE OF PLAINTIFF'S CASE)**

The Town of Wayland, Wayland Public Schools, Paul Stein, Brad Crozier, and Allyson

Mizoguchi, hereby move, pursuant to Fed. R. Civ. P. 50(a), that the Court enter judgment in their

favor on the three remaining Counts of plaintiff's Amended Complaint.  As grounds therefor, the

defendants state as follows:

## I.      LEGAL STANDARD

Pursuant to Rule 50(a)(2), "a motion for judgment as a matter of law may be made *at any*

*time* before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2) (emphasis added).  A trial

court may grant a Rule 50 motion before the case is submitted to the jury if, after the party "has

been fully heard on an issue," the court "finds that a reasonable jury would not have a legally

sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1). The

court should consider "'[a]ll of the evidence and reasonable inferences drawn from the evidence

... in the light most favorable to the non-moving party,' and may not evaluate the credibility of

the witnesses or the weight of the evidence.  However, 'the plaintiff is not entitled to inferences

based on speculation and conjecture.'" *Cham v. Station Operators, Inc.,* 685 F.3d 87, 93 (1st Cir. 2012) (citations omitted); *Ferrer v. Zayas*, 914 F.2d 309, 311 (1st Cir. 1990).  Moreover, a non-moving party who bears the burden of proof, as plaintiff does here, must have presented "more than a mere scintilla of evidence in [his] favor" to withstand a Rule 50 motion.  *Peguero-Moronta v. Santiago*, 464 F.3d 29, 45 (1st Cir. 2006), *citing Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 76 (1st Cir. 2001).  Additionally, evidence proffered by the non-moving party must make existence of the fact to be inferred more probable than its non-existence.  *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 28 (1st Cir. 1996).   "A directed verdict is proper when the evidence leads to but one conclusion."  *Jordan-Milton Mach., Inc. v. F/V Teresa Marie, II*, 978 F.2d 32, 34 (1st Cir. 1992) (citations omitted).

## II.   ARGUMENT

Based on plaintiff's evidence, under Rule 50(a)(1), "a reasonable jury would not have a legally sufficient evidentiary basis to find for" plaintiff on the following issues:

### A.   <u>Plaintiff's Intentional Interference with Contractual Relations Claim (Count VII – vs. Individual School Officials, Only)</u>

Mr. Cass alleges the individual School Officials, Dr. Stein, Ms. Mizoguchi, and Mr. Crozier, intentionally interfered with his employment contract, in part, by writing a negative, false performance review with a retaliatory motive.  Moreover, the Performance Evaluation was reviewed by the School Department's long-time outside Labor Counsel, Regina Tate.  Accordingly, all three School Officials are entitled to a qualified privilege.  Plaintiff has introduced no evidence whatsoever to overcome the privilege.

To prevail on this claim, Mr. Cass "must prove that (1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract . . .; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the

plaintiff was harmed by the defendant's actions." *O'Donnell v. Boggs*, 611 F.3d 50, 54 (1st Cir. 2010) (quoting *Harrison v. NetCentric Corp.*, 744 N.E.2d 622, 632 (Mass. 2001)).   The individual defendants are entitled to a qualified privilege because their employment decision, Ms. Mizoguchi's decision not to renew Mr. Cass's contract, was well within the scope of their supervisory duties.  *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 76 (1st. Cir. 2001). Mr. Cass has not met his burden of proving that the School Officials acted with "actual malice," which was the "controlling factor in the supervisor's interference."  *Id.*  Plaintiff must meet this burden to defeat the privilege, and he has not done so.  *See id.*  As this Court noted in the Memorandum and Order on defendants' Motion for Summary Judgment, "Proof of actual malice requires more than a showing of mere hostility." *Id.*; *see also King v. Driscoll*, 638 N.E.2d 488, 495 (Mass. 1994); Memorandum and Order on Defendants' Motion for Summary Judgment, p. 30.  "'[A]ctual malice' is a 'spiteful, malignant purpose, unrelated to the legitimate corporate interest.'"  *Cariglia v. Hertz Equip. Rental Corp.*, 363 F.3d 77, 88 (1st Cir. 2004); *see also Welch v. Ciampa*, 542 F.3d 927, 944 (1st Cir. 2008) (discussing analogous tortious interference with advantageous relations claim).   Mr. Cass has not established that actual malice was the "controlling factor" in his nonrenewal, because there is no evidence of actual malice in the trial record which would warrant submitting this claim to the jury.

Mr. Cass's own testimony undercuts this element.   He testified he believed Ms. Mizoguchi "was a really good person" and never expressed any malice toward him.  He testified he thought the two had a "really good" relationship.  Ms. Mizoguchi never made any demeaning or derogatory comments toward Mr. Cass, and there were never any exchanges of yelling or swearing by either.  Mr. Cass believed the relationship was "amicable," and he testified he bought a house in Wayland at least in part because of his working relationship with Ms.

Mizoguchi.   At the charging conference, on the record, plaintiff's counsel conceded, "there's no evidence [of retaliatory motive] on Allyson Mizoguchi so far, and that may well be the case."

Moreover, the trial record demonstrates that Ms. Mizoguchi's decision not to renew Mr. Cass's contract was related to a legitimate corporate interest.   As a number of witnesses have testified, in early April, 2015, Ms. Mizoguchi met with Dr. Stein, Mr. Crozier, Assistant Principal Scott Parseghian, and Assistant Principal Ethan Dolleman to discuss the renewal of Mr. Cass's contract.   The meeting was professional; as Dr. Stein testified, the participants focused on "what was best for the School.   What was best for the school was to continue, and not renew [Mr. Cass]."   This falls squarely in line with a legitimate corporate interest.   *See Welch*, *supra*, 542 F.3d at 944.   No participant in the April, 2015 meeting made any comments that were disparaging or belittling toward Mr. Cass.   The discussion was "professional and civil," as Dr. Stein testified.   No participants made any comments personally directed at Mr. Cass, other than to discuss his performance as Athletic Director.   Even so, Dr. Stein testified Ms. Mizoguchi "struggled with this decision right to the very end."   In an email dated April 8, 2015 (12:10 a.m.),[1] Ms. Mizoguchi wrote to her mentor, longtime administrator Wayne Ogden, regarding Mr. Cass's non-renewal.   She stated, "the ball is rolling and I am in a bit of emotional distress.   Just feeling a little sad about the whole thing.   (Yeah, I'm a big softie.)"   Joint Exhibit 97.   There is no evidence that a "spiteful, malignant purpose" played any role, let alone that it was the "controlling factor" in Ms. Mizoguchi's decision not to renew Mr. Cass's contract.   *See Cariglia v. Hertz Equip. Rental Corp*., 363 F.3d 77, 88 (1st Cir. 2004); *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 76 (1st. Cir. 2001).   Because there is no evidence of actual malice in the trial record, Count VII fails.

---

[1] Ms. Mizoguchi testified the time stamp of some emails could be inaccurate by four to five hours, though others were accurate.

### B. Plaintiff's Title IX Retaliation and Discrimination Claim (Count I)

Title IX prohibits retaliation against third parties who complain about Title IX violations. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 181 (2005). Like all employment retaliation claims, claims under Title IX are examined under the *McDonnell Douglas* burden-shifting framework. *See Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 350 (1st Cir. 2018). In order to recover, the plaintiff must establish a prima facie case by showing that "[he] engaged in activity protected by Title IX, that the alleged retaliator knew of the protected activity, that the alleged retaliator subsequently undertook some action disadvantageous to [him], and that a retaliatory motive played a substantial part in prompting the adverse action." *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002). If plaintiff has made a prima facie showing, the "defendant must articulate a legitimate, non-retaliatory reason for its employment decision." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 26 (1st Cir. 2004). If the defendant meets its burden, then the plaintiff must "show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Id.*

Here, as a matter of law, the plaintiff did not satisfy his prima facie case. First, he did not establish that a retaliatory motive played a "substantial part" in prompting the adverse action. *Frazier, supra*, 276 F.3d at 67.[2] There is no evidence in the trial record of a retaliatory motive playing *any part* in the adverse action with respect to *any* of the defendants. As he did at the

---

[2] The School Officials do not concede that Mr. Cass engaged in activity protected by Title IX. Mr. Cass's unadorned claim that WHS Athletics "is a walking Title IX violation," with little, if any, documentation or data to support this claim, does not constitute "activity" protected under Title IX. See 45A Am. Jur. 2d Job Discrimination § 228 (2019) (discussing analogous Title VII standard) ("A plaintiff asserting a [Title IX] retaliation claim must not only show that he or she subjectively, that is, in good faith, believed that his or her employer was engaged in unlawful employment practices but also that his or her belief was objectively reasonable in light of the facts and record presented.")

summary judgment stage of this case, Mr. Cass has apparently relied on the timing of his non-renewal in an attempt to establish his prima facie showing. *See Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004) ("a showing of discharge soon after the employee engages in an activity specifically protected . . . is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation.") (quoting *Oliver v. Dig. Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988)).  The trial record, however, establishes that Mr. Cass first raised his purported "concerns" regarding the state of athletic finances before Allyson Mizoguchi even became the Principal of Wayland High School, in the summer of 2014 – almost a year before his non-renewal.  The trial record also demonstrates that Paul Stein consulted the Town's outside labor counsel, Attorney Gini Tate, on March 30, 2015 – before Mr. Cass sent his memorandum of "Wayland Athletic Concerns" (which, itself, was sent at a time Mr. Cass knew he should have already received Superintendent Stein's notification of an intent to renew his contract, if it were to happen).  Dr. Stein testified that the March 31, 2015 Memorandum was "substantially similar" to a longer letter Mr. Cass sent to him on May 5, 2015.  Thus, at the very least, the School Officials were aware of Mr. Cass's laundry list of concerns five weeks before he was formally non-renewed by Dr. Stein.

Mr. Cass has offered no other evidence of retaliatory motive, and a jury cannot be left to guess that one existed based solely upon Mr. Cass's own speculation.  Moreover, the School Officials offered multiple legitimate, non-retaliatory reasons to justify Mr. Cass's non-renewal. These reasons included Mr. Cass's poor and ineffective leadership skills, his failure to develop as a leader, his caustic communication style, his volatility, and his failure to obtain a teaching certification over the course of two years, among other reasons.  As reflected in the trial record, plaintiff did not show that *any* of these reasons were pretextual.  While Mr. Cass has claimed that

Ms. Mizoguchi unfairly relied on the opinions of four coaches who were allegedly resistant to his attempts at reform, Ms. Mizoguchi testified she did not take those opinions into account in performing her assessment of Mr. Cass's leadership, nor does she solicit the opinion of other coaches in her reviews of the current Athletic Director, Heath Rollins.  Rather, she had ample opportunities to make her own assessment based upon weekly meetings with Mr. Cass and countless interpersonal communications, both in person and via email.  Their communications were "constant," and they shared a suite of offices.

With respect to Mr. Crozier and Dr. Stein, Mr. Cass has offered no evidence to support his claim that either man acted with a retaliatory animus with respect to what amounts to their refusal to intervene or reverse Ms. Mizoguchi's decision not to renew his contract.  Mr. Crozier, specifically, testified he had a single conversation with Mr. Cass on September 18, 2014 regarding Mr. Cass's emailed allegation that WHS athletics was a "walking Title IX violation." When asked for specific data to further investigate the allegation, Mr. Cass told Mr. Crozier he had made the statement "to cover his ass" following receipt of a critical email from a well-known parent with six children in the Wayland Public School system.  Mr. Cass "recanted," and never followed up - or even responded to - Mr. Crozier's subsequent inquiry and request for further information.  In Mr. Crozier's follow-up email to Mr. Cass, dated October 9, 2014, he even suggested "we seek a third party to review the data and your concerns."  Joint Exhibit 84.  Mr. Crozier closed the email, "I am willing to continue to discuss all of these issues moving forward."  Rather than retaliatory or hostile, his reply invites a constructive dialogue. Nonetheless, Mr. Cass never again raised these purported Title IX "concerns" with Mr. Crozier until after receipt of the non-renewal letter on May 8, 2015.

In light of the above, the plaintiff cannot recover under Count I of his Amended Complaint.  Therefore, judgment should enter for the defendants on Count I as a matter of law.

### C.  <u>Plaintiff's Massachusetts Whistleblower Act ("MWA") Claim (Count II)</u>

Mr. Cass's MWA claim fails for the same reasons enumerated above.  Mr. Cass has simply not shown that his participation in a protected activity played a "substantial or motivating part" in the retaliatory action.  *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 303 (1st Cir. 2014).  Moreover, Mr. Cass has not demonstrated that he had a "reasonable" belief of any violations of Title IX.  Rather, the trial record establishes that he first made a comment regarding WHS Athletics being a "walking Title IX violation" "to cover his ass."  When Mr. Crozier requested Mr. Cass provide additional data to substantiate his claim on September 18, 2014, Mr. Cass never responded, and let the matter drop – until he received his notification of non-renewal in May, 2015.  To the extent plaintiff premises his MWA claim on fundraising as a cause of a perceived Title IX violation, as the defendants previously submitted in their Trial Brief on this issue, Mr. Cass could not have "reasonably believed" that Wayland Public Schools Athletics Department and/or WHS team fundraising initiatives violated Title IX with respect to fundraising for singular teams but not for others, in the absence of a showing that teams which lacked fundraising also lost a meaningful opportunity or benefit their counterparts received.  There is no evidence of this in the trial record, other than Mr. Cass's emailed reference to a girls' team having to share uniforms (which would have been Mr. Cass's responsibility to budget for when establishing a proposed budget for the Athletic Department).

To the extent plaintiff premises this claim on alleged violations of law which he brought to the attention of the School Officials, Dr. Stein testified he requested information from Mr. Cass about coaches being paid "under the table," and Mr. Cass replied that the issue was "in the

past."  Dr. Stein testified that the various "concerns" lists made vague reference to a number of complained-of practices and policies, with no specific practices or policies referenced. Insufficiently defined allegations such as these are too vague to constitute protected activity under the MWA.  *See Trychon v. Mass. Bay Transp. Auth*., 90 Mass. App. Ct. 250, 258 (2016).

Moreover, to be protected under the MWA, a disclosure must raise allegations of serious governmental misconduct sufficient (once again, in the view of a reasonable employee) to rise to the level of illegality or a threat to the public health, safety or environment.  M.G.L. c. 149, § 185(b)(1).  "A risk to public health, safety of the environment" has been interpreted to mean "a risk to public health, *public* safety, or the environment," not just a risk to plaintiff's safety. *Trychon, supra,* 90 Mass. App. Ct. at 257 (emphasis in original).  If the disclosure is of a trivial nature and/or raises issues of compliance solely with internal policies or guidelines, it may not be protected from retaliatory action.  In *Service v. Newburyport Housing Authority*, 63 Mass. App. Ct. 278 (2005), the plaintiff claimed she was terminated from her position as defendant's rental assistance and systems administrator because she complained to a supervisor about the executive director's use of profane language.  The Appeals Court affirmed summary judgment in favor of the defendant on the grounds that plaintiff's disclosure was not one of illegal activity or conduct harmful to the public.  Even if the executive director's use of profane language violated defendant's personnel policy manual, the manual could not be construed as a "rule or regulation promulgated pursuant to law."  *Id.,* 63 Mass. App. Ct. at 283.  To the extent Mr. Cass premises his MWA claim on his disclosure of purported MIAA violations or alleged violations of Wayland School Committee fundraising policies, the MWA claim fails as a matter of law because these disclosures do not concern governmental misconduct sufficient to rise to the level

of illegality or a threat to the public health, safety or environment.  As such, plaintiff cannot recover under Count II as a matter of law.

## III.    CONCLUSION

As further grounds, School Officials rely upon the oral arguments made in open court upon this Motion.

WHEREFORE, pursuant to Fed. R. Civ. P. 50(a), the defendants, Town of Wayland, Wayland Public Schools, Paul Stein, Brad Crozier, and Allyson Mizoguchi, hereby move that the Court enter Judgment as a matter of law against the plaintiff on all of the remaining Counts in plaintiff's Amended Complaint, with prejudice, and costs, and such other relief as this Court deems just and proper.

Respectfully submitted,
The Defendants,
TOWN OF WAYLAND, WAYLAND PUBLIC
SCHOOLS, PAUL STEIN, BRAD CROZIER, AND
ALLYSON MIZOGUCHI,
By their attorneys,
**PIERCE DAVIS & PERRITANO** LLP

*/s/ John M. Wilusz*
Adam Simms, BBO #632617
John M. Wilusz, BBO #684950
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
asimms@piercedavis.com
jwilusz@piercedavis.com
jdavis@piercedavis.com

Dated:  July 16, 2019

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served, in hand, upon those indicated as non-registered participants on July 16, 2019.

*/s/ John M. Wilusz*
John M. Wilusz