UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN F. CASS,<br><br>        Plaintiff,<br><br>v.<br><br>TOWN OF WAYLAND, WAYLAND PUBLIC SCHOOLS, WAYLAND POLICE DEPARTMENT, PAUL STEIN, BRAD CROZIER, ALLYSON MIZOGUCHI and JAMES BERGER [Misnamed],<br><br>        Defendants. | CIVIL ACTION NO.: 1:17-CV-11441 |

**AFFIDAVIT OF BENJAMIN L. HINCKS IN SUPPORT OF
TORRES, SCAMMON, HINCKS & DAY, LLP'S
MOTION TO UNSEAL THE RECORD
OF THE SEPTEMBER 13, 2018 *EX PARTE* HEARING**

I, Benjamin L. Hincks, being duly sworn, hereby depose and state:

1. I am a Partner in the law firm Torres, Scammon, Hincks & Day, LLP ("TSH&D"), the original and now former counsel of record to the Plaintiff in this lawsuit.

2. I make this Affidavit in connection with Torres, Scammon, Hincks & Day, LLP's ("TSH&D") accompanying Motion to Unseal the Record of the September 13, 2018 *Ex Parte* Hearing, and memorandum of law in support thereof. I have personal knowledge of the matters referred to herein.

3. During the summer of 2018, circumstances arose between Mr. Cass and TSH&D that, in my view amounted to an irreconcilable ethical conflict of interest, requiring the firm's withdrawal as counsel for Mr. Cass. I informed Mr. Cass of my conclusions and he responded that he understood and would support a Motion to Withdraw. I agreed to assist

Mr. Cass in securing new counsel, and, after Magistrate Jennifer C. Boal allowed the Motion to Withdraw, I did so. Mr. Cass ultimately hired the firm of Adler Pollock & Sheehan, P.C. ("APS").

4. Following the Court's October 18, 2019 post-trial hearing on various matters, including Mr. Cass's motion seeking attorneys' fees, Counsel for Defendants, Adam Simms, Counsel for Mr. Cass, Todd White and Jamie Bachant, and I dedicated many hours in the exchange and negotiation of legal fee reports, invoices, and responses to them. All counsel proceeded in good faith, and, ultimately, the parties and their counsel arrived at a negotiated and significantly reduced attorney fee number for each of APS and TSH&D; those figures were wrapped into a final resolution of the case yielding the Stipulation of Dismissal, which resolution was comprised of three components: the full amount of the jury verdict in favor of Mr. Cass, the full amount of pre-judgment interest associated with that verdict, and the two Cass firms' negotiated and reduced attorney fee figures.

5. On or about December 10, 2019, I received a call from Brian Cook, who purported to be Mr. Cass's new counsel. Mr. Cook informed me that Mr. Cass objected to TSH&D receiving its negotiated fee amount. Mr. Cook later contacted our firm and informed us that he would not be representing Mr. Cass on this matter going forward. TSH&D is not aware of any subsequent counsel engaged by Mr. Cass in this matter.

6. TSH&D received from Mr. Cass a Demand Letter under Mass. Gen. L. Chapter 93A, Section 9, which is dated January 13, 2020. A true and accurate copy of the Demand Letter is attached hereto at Exhibit A.

7.      At or near the time TSH&D received this Demand Letter, I became aware that Mr. Cass had also recently issued a M.G.L. Chapter 93A demand letter raising a separate fee dispute – and also threatening legal action – against APS.

8.      At present, the negotiated attorneys' fees paid by or on behalf of Defendants for the benefit of TSH&D are being held in escrow by APS in its IOLTA account. APS has notified TSH&D that it intends to hold such funds in escrow unless and until APS receives either consent by Mr. Cass or a court order to release the funds.

Signed under the pains and penalties of perjury this 5th day of March, 2020.

_____
Benjamin L. Hincks

# EXHIBIT A

January 13, 2020

Attorney Benjamin Hincks  BY CERTIFIED MAIL
Torres Scammon, Hincks and Day, LLP
35 India Street
Boston, MA 02110

STEPHEN CASS MGL C 93A Consumer Protection Demand

Dear Mr. Hincks:

I am writing to you under the provisions of Massachusetts General Laws, Chapter 93A, Section 9, the Consumer Protection Act. I am requesting relief as outlined in the statute.

As you are aware you were engaged by me to assist with my issues concerning the Town of Wayland for multiple legal claims concerning the loss of my employment under highly questionable and suspect circumstances. I made it clear from the first discussion that this was not just a legal action for money damages or a quick hit settlement, but a hope to regain my employment through reinstatement, achieve my proper pension credit, reestablish my reputation in my chosen field and be vindicated under the Whistle Blower Statute for validly exposing improper and illegal behavior that damaged the students of Wayland.

You memorialized our understanding in a fee agreement which is attached hereto.

As you have known me for a long time you were fully aware of my upbringing and the importance of school sports in the development of young people. For me being a coach and an athletic director was not just a career but the family business. With all that being said you understood more than many others the very important and very personal aspects of my existence that were under attack in this action. As such you also knew the emotional and psychological issues that I was wrestling with and were aware that money alone was not enough. And with that knowledge you agreed to take on my representation fully understanding the road that we were going to travel to give a measure of satisfaction to someone who had been abused, lied to, humiliated and treated with disdain and disrespect for merely trying to do his job, to do the right thing.

After spending significant time and effort on this case you determined for personal and professional reasons that you had taken this case as far as you could and decided to withdraw from the case. Prior to doing so you and Ms. Scammon attempted to convince and pressure me and my brother to accept the settlement you thought you could achieve that was far below my expectations. When I refused you lost interest and moved on leaving me without counsel and with few possibilities. This decision was made for your benefit not for mine.

As such any attempt by you now to claim fees to which you are not entitled shall be met with any and all legal actions available to me. As a result of your walking away I could have been left with no job, no prospects, no future, no career and a reputation in shreds, to say nothing of the emotional and psychological torment.

As an alternative to further litigation I am prepared to offer you $60,000 which exceeds the lien value you discussed with both successor counsel and me. If we cannot resolve this issue I will move forward under many theories of Massachusetts Law including M.G. L. c. 93 A the Consumer Protection Statute.

I intend to prove that you and your firm violated MGL c. 93 A in the following respects:

1) By entering into a fee agreement and then walking away when you did not believe you could win
2) By failing to aggressively pursue potential actions and ignoring my stated goals you violated MGL c. 93 A and 940 C.M. R. section 3.16 (2) and committed unfair and deceptive acts and practices;
3) By placing your own interests above those of your client's and withdrawing at a pivotal time in the proceedings you may have violated conflict of interest laws
4) And by degrading the state of the case to possible successor counsel you may have damaged me and the case beyond repair
5)

At some point in the proceedings the attorneys engaged in a discussion with the trial judge in which the subject of legal fees was discussed. However, these discussions never resulted in an "actual court mandated award " of legal fees. These discussion may have merely created a concern in the insurance carrier and led them to a pre-determined settlement rather than face the unknown which might have included tripling of the verdict, restored seniority rights (potentially worth $500,000+), reinstatement, job search fees and the award of other expenses deemed appropriate to make the victim "whole". A settlement amount was agreed to and the settlement agreement was executed between the carrier, the defendants and me, Stephen Cass. There was no mention of lawyers or legal fees, the jury verdict or remedies available under MA law.

To reiterate, at the time that you chose to withdraw I had not received any award or settlement. At the time you chose to withdraw I was left without any representation. When Adler Pollack and Sheehan did agree to represent me, you were not mentioned as counsel or included in any fee arrangement. There was no talk of your continued involvement, payment or any compensation.

It is Black Letter Law that "

**IF AN ATTORNEY ON A CONTINGENT FEE AGREEMENT WITHDRAWS BECAUSE HE HAS LOST INTEREST IN THE CASE OR BELIEVES THAT A REJECTED OFFER OF SETTLMENT THOUGH LOW IS THE BEST THE CLEINT CAN DO, HE/SHE IS NOT ENTIELD TO ANY FEE WHEN A BETTER RESULT IS ACHIEVED BY SUCCESSOR COUNSEL**

Upon information and belief these actions were performed willfully and knowingly. As a result the unfair and deceptive acts and practices of you and your staff in manipulating your fee agreements and altering your fees I will suffer further injury including emotional distress and the time and expense of pursuing various legal strategies to address your actions.

In light of the foregoing, I am requesting that you accept my offer of settlement, to you of $60,000 which exceeds the $45,000 noted previously in the lien discussed with me and successor counsel Todd White.

If this matter is not resolved to my satisfaction, I will seek all legal and professional avenues available to me and seek multiple damages and attorney's fees if an action is brought on the issues associated with this demand letter.

Under M.G. L. c. 93 A you have thirty (30) days from the date of receipt of this letter to accept my offer of settlement or to respond with a reasonable offer of settlement. If you fail to do so, the statute provides that you will be liable for multiple damages and the reasonable attorney fees for the prosecution of this action.

Sincerely,

Stephen Cass

# Torres, Scammon
# Hincks & Day, LLP

35 India Street, Boston, MA 02110

617-307-4426 Main   617-307-4427 Fax

May 17, 2016

$49,000
lien

**VIA E-MAIL**

Stephen Cass
21 Woodland Road
Wayland, MA 01778

Re: *Stephen Cass v. Various Wayland Officials To Be Named*

Dear Steve:

Per our prior communications, I am providing here our firm's engagement letter and related materials concerning our representation of you in connection with your claims against the Town of Wayland and/or various of its employees/officers. We are pleased that you have engaged Torres, Scammon, Hincks & Day, LLP ("TSH&D" or "the Firm") as legal counsel and look forward to working with you.

This engagement letter and the enclosed engagement documents are intended to provide both clients and TSH&D needed clarity and mutual protections. The engagement documents are a formal way to (1) ensure that our representation adheres to the rules of professional responsibility and conduct that we, as members of the bar, are obligated to uphold, (2) describe the scope of TSH&D's obligations to our clients and (3) delineate the terms and scope of our representation to which our clients agree.

TSH&D places client satisfaction as a paramount goal of its practice, and understands that client satisfaction depends both on the quality of the Firm's legal work and on strong relationships built on mutual respect and good will. This engagement letter and the enclosed engagement documents are a direct reflection of that commitment.

As your legal counsel, the Firm will initially provide legal representation and legal advice with respect to your employment and other claims against the Town of Wayland and/or various of its employees/officers yet to be finally determined, and thereafter as mutually agreed.

Terms of the TSH&D Engagement. This engagement letter, together with the enclosed Engagement Memorandum to TSH&D Clients and the Firm's Billing, Disbursement and Expense Policies, both of which are incorporated herein by reference, describe the terms of TSH&D's engagement. Among other things, these documents explain the Firm's billing arrangements and procedures, discuss staffing, request an advance conflict of interest waiver and explain the respective responsibilities of TSH&D and our Clients with regard to the Firm's

www.tshdlegal.com

May 17, 2016
Page 2

engagement. Please read these enclosures carefully, and call me to discuss any questions that you may have. Execution and return of the engagement letter to us will signify your agreement to the provisions of this engagement letter, the Billing, Disbursement and Expense Policies and the Engagement Memorandum.

      Initial Payment to TSH&D. As a good business practice, and in anticipation of the time and resources TSH&D will commit to the representation, the Firm typically requests that Clients make an advance fee payment upon agreeing to engage TSH&D. Given our prior relationship with you and the contingent nature of this engagement, however, a retainer is not necessary here.

      TSH&D is very pleased to have the opportunity for this representation, and we look forward to working with you. *Please call us with any questions about this letter or its enclosures. Unless you have questions or special instructions for us, we shall assume that you have reviewed this letter in full and accept all of the terms outlined in this letter and the enclosures.*

      Please do not hesitate to contact me at any point throughout the engagement with any questions or uncertainties you wish to discuss. We very much appreciate the opportunity to represent you.

*Please return an executed copy of this letter to my attention, and thank you*

Very truly yours,

Benjamin L. Hincks

Steven Cass

Enclosures (3): Duplicate Engagement Letter;
                   Engagement Memorandum to Clients; and
                   Billing, Disbursement and Expense Policies

## TSH&D'S CONTINGENCY MATTER BILLING, DISBURSEMENT AND EXPENSE POLICIES

### I. Billing and Attorneys' Fees.

Because TSH&D has agreed to represent Stephen Cass ("you" or "Client") on a contingency basis, the Firm will not bill you on the basis of the Firm's schedule of hourly rates in effect when the Firm renders services. The contingency fee upon which compensation is to be paid is the recovery of damages, whether by settlement, judgment or otherwise. The damages that are subject to a contingent fee do not include any expenses; and instead all expenses that are incurred are repaid first and serve to reduce the damage total upon which the contingency fee is calculated.

This agreement, and its performance, is subject to Rule 1.5 of the Rules of Professional Conduct adopted by the Massachusetts Supreme Judicial Court.

Compensation (including that of any associated counsel) to be paid to the Firm by Client on the foregoing contingency shall be the following percentage of the gross amount recovered:

(a) Twenty percent (20%) of any damages recovered from the commencement of our engagement until the time we file a lawsuit against the Town of Wayland and/or any of its employees/officers.

(b) Thirty percent (30%) of any damages recovered following our filing a law suit against the Town of Wayland and/or any of its employees/officers on your behalf, through trial and any and all appeals. In the event that you are awarded reimbursement or all or a portion of the value of the attorneys' fees TSH&D incurs in handling this representation, TSH&D shall be entitled to the greater of (a) the above-referenced thirty percent (30%) of the gross amount recovered (i.e. damages plus attorneys' fees), or (b) the amount of the attorneys' fees awarded.

The above percentages shall be applied to the amount of the recovery, not including any expenses, as set forth above.

Client's signature on the Engagement Letter represents an agreement that TSH&D has made no representations as to the value of your case at the time of the execution thereof, and that Client understands that each case stands on its own merits, and is unrelated in value to any other of seemingly similar circumstances.

If the attorney-client relationship between you and TSH&D is terminated before the conclusion of this matter for any reason, you understand that TSH&D may seek payment for the work done and expenses advanced before termination. Whether TSH&D will be entitled to receive any payment for the work done before the termination, and the amount of any payment will depend on the benefit to the client of the services performed by TSH&D as well as the timing and circumstances of the termination. Such payment shall not exceed the lesser of (i) the fair value of the legal services rendered by TSH&D, or (ii) the contingent fee to which TSH&D would have been entitled upon the occurrence of the contingency. This paragraph does not give TSH&D any rights to payment beyond those conferred by existing law.

Some aspects of this engagement will require a higher degree of expertise than other aspects. It is TSH&D's policy to assign and delegate responsibilities based upon the degree of experience and expertise required and the availability of attorneys with the relevant experience and expertise.

TSH&D will track its time spent on this matter on a monthly basis.

*April 2013*

If TSH&D is required to respond to a subpoena seeking production of Firm records relating to services that TSH&D performed for the Client, or if the Firm is required to testify by deposition or otherwise concerning such services, TSH&D will consult with the Client as to whether the Client wishes the Firm to supply the information requested or assert the attorney-client privilege to the extent available under applicable law. To the extent permitted under applicable ethical guidelines, by engaging TSH&D you agree to pay the Firm for hourly time charges and expenses incurred in responding to such demands and in providing advice, if the Firm is able to do so, regarding a response to such subpoenas without regard to whether or not TSH&D continued to represent you when the subpoena was delivered. Such charges may include, without limitation, the time and expense incurred in searching for documents and for photocopying costs, reviewing documents, making objections, appearing at hearings and depositions and otherwise responding to issues raised by such document requests or testimony.

2. *Disbursements and Expenses.* In connection with TSH&D's representation of Client in this matter, there are expenses that will be incurred. These expenses may include, but are not limited to, conference calls, legal research (Lexis-Nexis, Westlaw, etc.), messenger and other delivery services, postage, travel-related expenses (*e.g.*, airfare and other transportation charges, mileage, lodging, etc.), and document preparation and binding. We will submit to you on a monthly basis the actual expenses that are incurred but will defer collection of such expenses until the earlier of (a) the collection of any judgment or settlement amount is paid by defendant(s), or (b) the termination of this representation, or until such time as is otherwise mutually agreed upon by TSH&D and you. Also, we will seek your approval of any single expense in excess of $1,000.

TSH&D may also incur additional costs for such items as filing fees, service of process, stenographers, transcripts, witness fees, experts, title examinations and other professional services and similar items. Also, this engagement may make it appropriate to hire third-party service providers on behalf of Client. These services may include consulting or testifying experts, investigators, electronic litigation support (including the creation of appropriate databases), stenographers and others. With respect to these additional costs incurred to third parties, we request that you pay the providers directly, and in those instances in which we are required to pay an expense to facilitate certain action, you'll agree to pay those expenses to the service providers directly and reimburse us for any actual expenses we incurred on your behalf.

3. *Counterclaims.* Given the nature of the dispute you have with the Town of Wayland (and various of its employees/officers), it is possible that the defendant(s) may assert counterclaims against you. Though we will defend you against such an action without any additional fee, you will be responsible for the payment of any expenses relating to the counterclaim as well as for any award of damages or fees entered against you in a counterclaim.

*April 2013*