```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

*************************

STEPHEN F. CASS,
        Plaintiff

vs.                                  Case No. 1:17-cv-11441-PBS

TOWN OF WAYLAND ET AL,
        Defendants

*************************


                  TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE JENNIFER C. BOAL
                    AT BOSTON, MASSACHUSETTS
                     ON SEPTEMBER 13, 2018


APPEARANCES:

For the Plaintiff:
Benjamin L. Hincks, Esquire
Kristen S. Scammon, Esquire
Torres Scammon Hincks & Day, LLP
35 India Street, 5th Floor
Boston, Massachusetts 02110
617-307-4426

For the Defendants:
Adam Simms, Esquire
Pierce Davis & Perritano, LLP
10 Post Office Square, Suite 1100
Boston, Massachusetts 02109
617-350-0950


Prepared by:  Karen M. Aveyard,
              Approved Federal Court Transcriber

         ------------------------------------------------------

                        TRANSCRIPTION PLUS
                         1334 ELM STREET
                  LEOMINSTER, MASSACHUSETTS 01453
                         (978) 466-9383
                       k.aveyard@comcast.net
```

1                    P R O C E E D I N G S

2

3         THE COURT:  Yes?

4         MR. HINCKS:  I'll try to measure the tone of my

5    booming voice, your Honor.

6         Your Honor, I'll just go right to the basis and cut to

7    the chase so we can expand from there.

8         THE COURT:  Yes.  And if you're not speaking, you're

9    welcome to sit down, the rest of you.  So I leave that up to

10   you, if you want to leave him standing all by himself.  Yeah.

11        MS. SCAMMON:  That sounds like him.

12        (Pause.)

13        THE COURT:  Yes, you're welcome to continue.

14        MR. HINCKS:  Shall I proceed, your Honor?

15        THE COURT:  Yes.

16        MR. HINCKS:  The basis of the motion is a personal

17   conflict that's arisen originally between Mr. Cass and myself,

18   and we believe it requires withdrawal under Rules 1.16 of the

19   Professional Rules of Conduct, (a)(1), and 1.7(a)(2).  Your

20   Honor, this arose in the context of the mediation that was

21   scheduled in the case roughly middle of June.  Two months short

22   of the close of discovery in the case, we met to mediate with

23   Judge Collings.  There were two mediation sessions.  The first

24   session, as is often the case, the parties met in open session.

25   We went back and forth with claims and defenses and underlying

1    factual detail.  The judge heard a lot about the case.
2    Breakouts happened and there was some, but very little,
3    progress made, honestly, in coming to a settlement.
4           At the end of that session, I believe it was in a
5    breakout where Ms. Scammon and I were with Judge Collings, he
6    told us that in his view, my client, Mr. Cass, should seriously
7    consider, and I'm paraphrasing, of course, a settlement in the
8    low six figures, and I remember those were his terms.  He
9    didn't provide a basis for that, but the mediation broke
10   ostensibly for the opportunity to take two additional
11   depositions the parties agreed to take and come back before
12   Judge Collings thereafter, roughly three weeks to a month
13   later, to have a second session.
14           The end of the first session, your Honor, walking back
15   to our offices, I had the opportunity, just with my client, to
16   broach with him the subject of what Judge Collings had
17   recommended, and this was not inconsistent with conversations
18   that we had had preparing for the mediation, in terms of
19   managing expectations and evaluating the case for settlement.
20   I told Mr. Cass what Judge Collings had said and I put some
21   support behind the low six figures, in terms of, you know,
22   urging my client to consider that, and we stopped.  What
23   proceeded what was a very, very emotional moment, and
24   Mr. Cass -- I can get into more specifics in terms of what was
25   actually said because I had made a record of it and it's

1   certainly imprinted in my mind, but he told me unequivocally
2   that if the case was resolved at that number, low six figures,
3   or in this case it was in the $300,000 range, that he would
4   take his life, that he had taken steps in furtherance of that,
5   he had written letters, and that he was done.
6           What preceded, some background that's in my papers and
7   it's in Mr. Simms's papers, Mr. Cass has been a close friend of
8   mine for 35 years, and I can get further into my own reaction,
9   but my immediate reaction to that information, which I took
10  very seriously and I still do, is that my client needed help.
11  He needs counseling and he needs emotional support from friends
12  and family, and professional support.  So we spent some time
13  talking through that and coming up with a plan.  Such as it may
14  be, Mr. Cass met with his brother.
15          So there is a lot of dialogue that followed in that
16  regard and in terms of my concern for his well-being, and I can
17  report on, I guess, some actions that have happened
18  subsequently because this is going back two months at least
19  now, two and a half months.
20          The depositions were taken and we went back to
21  mediation.  There was more progress made on the settlement
22  front, but at the end Judge Collings actually made a
23  recommendation at the number of 300,000; gave the parties the
24  opportunity to respond confidentially.  We declined to settle
25  for reasons that I guess I've already stated.

Case 1:17-cv-11441-PBS   Document 209   Filed 05/05/20   Page 5 of 12

5

```
 1              There's really two sides to this, your Honor.  There's
 2     a personal side of it for me, and that's the egis of the 1.7,
 3     the personal conflict, notwithstanding the position my client
 4     is in, which I feel greatly for.  Obviously, I'm personally
 5     terrified for his safety.  I've been very anxious.  I've sought
 6     some counseling myself.  Many sleepless nights.  But there's a
 7     professional side of it too, which I think is -- it's at least
 8     as germane, and it's certainly germane to an imputed conflict
 9     to Ms. Scammon and to the firm, which is that as Rule 1.7 says,
10     the conflict, if it creates a significant likelihood of a
11     material limitation in the representation, then under the rules
12     my withdrawal is required.
13              This has impacted -- it did in the midst of the
14     mediation already, I believe, has impacted our ability to
15     advise our client and what we believe is in his best interest,
16     considering the issues and the facts and the law that are at
17     play here, but what looks like a case that is headed for trial,
18     your Honor, it's also an impossible position for counsel to be
19     in where the statements that have been made have been made and
20     the risk of a defense verdict.
21              I guess that's all I'll say for now.  If you have more
22     questions, your Honor.  We believe that Ms. Scammon and I
23     should both be permitted to withdraw.  We believe it's
24     required.  And certainly Mr. Cass, you can question him, but
25     he's been vigorously looking for replacement counsel.  I think
```

1    he's made great strides in that regard.  I personally have
2    spoken to a half a dozen or more interested law firms and I
3    think even this morning I spoke to one, so he can speak further
4    to that.  But I'm hopeful that he will find counsel.  He's
5    going to need time if the motion is allowed to do that, and
6    counsel, of course, would need time to get up to speed.  I'll
7    leave that to your Honor and to Judge Saris, not putting the
8    cart before the horse.
9            But that's, in a nutshell, the basis of the motion,
10   your Honor.
11           THE COURT:  Alright.  Ms. Scammon, do you wish to add
12   anything or?
13           MS. SCAMMON:  I think Ben pretty much covered it, but,
14   you know, we're similarly situated in that we're partners in
15   our small firm.  I also don't have the personal relationship
16   with Mr. Cass that Mr. Hincks does.  But in sort of thinking
17   through all these issues, which your Honor should know we did
18   struggle with, I thought about what I would do if it was just
19   me, and I feel like I'd be in the same position, that I'd feel
20   like it would compromise my ability to represent a client going
21   forward.  So I just want to add that.
22           THE COURT:  Mr. Cass, I see that you're upset about
23   this as well.  You don't need to say anything, but is there
24   something that you would like to tell the Court?
25           THE PLAINTIFF:  Well, I certainly understand his

1  situation. I have been looking very hard every day to find
2  replacement counsel and the one thing that they all tell me is
3  they couldn't possibly commit to anything without some kind of
4  a significant extension, discovery and the guidelines, because
5  they have to fit it into their schedule. So that's been the
6  real challenge with trying to find someone who can take it and
7  jump right into it.
8            THE COURT: I understand that.
9            I think -- you may be seated. Based on what you've
10 told me, and also that was germane to the explanation, was part
11 of the settlement discussions, right. So I think if the --
12 even though I'm the assigned magistrate judge, I would have to
13 recuse myself because now I've heard a little bit about the
14 settlement.
15           So that being said, and I wouldn't usually get
16 involved in this, is the settlement off the table? I mean, it
17 just seems, given how high the emotions are running, is it --
18 I'm wondering if there might be a way to resolve this. I mean,
19 I know Judge Collings tried, but he may not have known all of
20 this that was going on.
21           MR. HINCKS: Your Honor, I think the simplest way to
22 answer that question --
23           THE COURT: Yeah.
24           MR. HINCKS: -- is to be direct and say the settlement
25 is off the table.

1         THE COURT:  Okay.
2         MR. HINCKS:  There's a lot of emotion and, you know,
3   there's emotion created by the circumstances, but of course the
4   underlying cause, certainly from my client's standpoint, is the
5   experience and the hurt that he's suffered that's the basis of
6   the Complaint.
7         THE COURT:  I can say this because I'm not going to be
8   involved any further.
9         MR. HINCKS:  Yeah.
10        THE COURT:  I can certainly appreciate the arrest and
11  all of that, but I'm sure you all have discussed in some ways
12  just continuing the case perpetuates it in some way too.
13        MR. HINCKS:  All been discussed.  In my mind, it's
14  been much more difficult for me since the conflict arose --
15        THE COURT:  Yes.
16        MR. HINCKS:  -- for, I think, reasons that are
17  apparent, but I have asked consistently throughout the past
18  weeks if Mr. Cass has had any change of heart and the answer
19  has been no.
20        THE COURT:  Okay.  And I'm pleased just as a human, as
21  opposed to a judge, it sounds also like Mr. Cass is taking
22  steps to address some of the emotions that arose as a result.
23        MR. HINCKS:  He is.  If I just could add, he is, your
24  Honor.  He's consulted at sort of the intake level.  He's
25  working through some insurance issues.  I think this is

1    significant for me too because there are very few people who
2    know about this, and understandably, so there's limited family
3    involvement.  I know about it and one other mutually very close
4    friend knows about it, so I feel like I've worn two hats here.
5            THE COURT:  Yes.
6            MR. HINCKS:  I'm wearing two hats and the hat that I
7    want to wear is supporting my friend, if necessary, with our
8    friends, figuring out, notwithstanding insurance, the most
9    important thing is to get him counseling, at least the most
10   important thing for right now, the next step.  So that is
11   something that we've been working through.
12           THE COURT:  Alright.  Thank you.
13           So I think if there's nothing else, I'll ask defense
14   counsel to come back in, and then I'll take it under
15   advisement.  Obviously, any extensions, and I'll explain that
16   to defense counsel, will have to be taken up with Judge Saris.
17           MR. HINCKS:  Would your Honor be in -- I assume your
18   Honor will -- are you deciding the motion, making a
19   recommendation, would you also be able to make a
20   recommendation --
21           THE COURT:  In terms of --
22           MR. HINCKS:  -- in terms of timing and the like,
23   because I know that Mr. Cass told me even an hour ago that he
24   already elaborated a little bit on.  There are two things that
25   I think several firms are sort of waiting for.  One is the

1    decision on this motion.

2             THE COURT:  Yes.

3             MR. HINCKS:  But the other is if the motion is
4    allowed, will the current schedule be adhered to.  I understand
5    that your Honor is not in a position to answer that, but if
6    your Honor might be in a position to make a recommendation on
7    that situation to Judge Saris.

8             THE COURT:  Yeah.  I mean, I guess I'll have to think
9    about my own conflict now that I know some of the settlement
10   numbers.  I'm not sure that's a barrier to me recommending an
11   extension of the deadlines.  I don't think it's -- when I
12   decide a motion for leave to withdraw with a corporation, and
13   obviously then a corporation can't appear pro se, so there's a
14   potential for a default, I typically do that as a report and
15   recommendation.  I don't think that needs to be the case here
16   because Mr. Cass could represent himself, so there's not a
17   default potential.  But that's technical stuff that I just have
18   to work through.  And then whether or not I can recommend.

19            I mean, it seems to me to make sense, if there's new
20   counsel, that there be an extension, but ultimately she'll have
21   to decide that.

22            MR. HINCKS:  Thank you, your Honor.

23            THE COURT:  Mr. York.

24            THE CLERK:  (Inaudible.)

25            THE COURT:  Yes.  So the sealed record is over and you

1     can ask defense counsel to come in.

2

3              (End of audio.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

      I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 11 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

/s/ Karen M. Aveyard

Karen M. Aveyard

May 1, 2020

Date